IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHRISTINE LEVINSON, as Conservator for
ROBERT LEVINSON; CHRISTINE LEVINSON,
SUSAN LEVINSON BOOTHE, STEPHANIE
LEVINSON CURRY, SARAH LEVINSON
MORIARTY, SAMANTHA LEVINSON,
DANIEL LEVINSON, DAVID LEVINSON and
DOUGLAS LEVINSON,

    Plaintiffs,

v.                                    CIVIL ACTION NO.: _____

THE ISLAMIC REPUBLIC OF IRAN,
c/o Ministry of Foreign Affairs

    Defendant.
_____/

**COMPLAINT**

1.    Plaintiffs Robert Levinson, his wife Christine Levinson and their seven children, Susan Levinson Boothe, Stephanie Levinson Curry, Sarah Levinson Moriarty, Samantha Levinson, Daniel Levinson, David Levinson and Douglas Levinson (collectively the "Levinson family," the "Levinsons" or "Plaintiffs") bring suit against the Islamic Republic of Iran ("Iran") under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 et seq ("FSIA") for injuries suffered by each of them as a result of Iran's unlawful acts of hostage taking, torture and other torts.

2.    On March 9, 2007, Robert Levinson disappeared while visiting Kish Island, a resort island that is a part of Iran and located in the Persian Gulf just off the Iranian mainland. Three weeks after his disappearance an Iranian government news outlet, Press TV, announced that he had been taken into custody by Iranian security authorities but was expected to be

released shortly. Despite this report, Robert Levinson was not released and the Iranian government began falsely denying any knowledge of his capture or whereabouts.

3. For the past ten years the Iranian government has held Robert Levinson captive while at the same time denying any knowledge or involvement in the circumstances of his capture. In order to maintain its false story, Iran has held Robert Levinson *incommunicado*. As a result, for the last ten years he has had no contact with the outside world, including the government of the United States and most importantly, his wife and seven children. The only persons with whom Robert Levinson had contact since March of 2007 are his captors.

4. The government of the United States, the Levinson family and the United Nations Human Rights Council have all pressed Iran to own up to the truth and to return Robert Levinson. The Levinson family has employed Iranian counsel to seek any available legal remedy, and the United States government has repeatedly pressed Iran for assistance and offered to engage in whatever process was necessary to achieve that end. Christine Levinson, accompanied by Daniel Levinson, traveled to Iran in December of 2007 to plead with the Iranian government for her husband's release. Iran has repeatedly and falsely responded that they do not know who is holding Robert Levinson. In a cynical effort to convince the government of the United States and the Levinson family that it is others who are holding Robert Levinson, Iran has arranged for extortion demands to be sent to the Levinson family, purportedly from some unidentified terrorist group. These demands began with a series of emails to Levinson's family and friends demanding changes in U.S. policy and threatening Levinson's life. This series of emails began in August of 2007, but until November of 2010 none contained proof that the source actually had access to Levinson and that he was still alive. This changed with the receipt of two messages, one in November of 2010 and another in April of 2011. The first of these two

messages was accompanied by a video of Levinson and the second by a series of photographs of him.  In the video he is dressed in what appears to be his own white collared shirt, now torn and several sizes too large, and in a quivering voice pleads for help from the United States.  In his plea he states that he is not in good health.  The video is attached to an email demanding $3,000,000 and the release of certain named individuals and threatening to kill Robert Levinson if their demands are not met.  The Levinson family immediately replied with a message to the sender of the email, but there was no response to their message.  The persons whose release was demanded could not be located and no instructions were ever received on how to deliver the ransom. The second email message was received in April of 2011.  It consisted of a series of five photographs of Robert Levinson.  In these photographs Robert Levinson has plainly lost a great deal of weight, his hair is disheveled and he has a long beard.  He is wearing an orange jump suit comparable to those worn by prisoners in Guantanamo Bay and he is bound by chains.  In each photograph he holds a printed message pleading for help.

5. Experts from the FBI have concluded that the messages described above were part of an Iranian attempt to create a false scenario that Robert Levinson was being held by some entity, other than the Iranian government, so that Iran would not be held responsible for his ultimate fate.

6. The threatening messages, along with the video and photographs described above, were enormously disturbing to the Levinson family.  They were intended to and did create significant emotional trauma in the entire family.

7. In October of 2011, the Iranian government made quiet offers to the United States that reflected their control over Robert Levinson's fate.  In that month, the Iranian ambassador to France, on very short notice asked for a meeting with representatives of an American religious

organization that had prior ties with Iranian officials.  The purpose of the meeting was to make a back channel offer to the United States government.  At the time, the International Atomic Energy Agency ("IAEA") was about to release a report on Iran's nuclear program.  This report greatly concerned the Iranian government, which feared it would draw conclusions damaging to Iran.  It was largely this concern that led the Iranian ambassador to request a meeting.  The meeting took place at the Iranian ambassador's residence and was shortly followed by a second meeting.  In each meeting the Iranian ambassador outlined a series of demands by the Iranian government, the most important of which was a postponement of the release date of the IAEA's report.  In both of the meetings, the Iranian ambassador told the American representatives that Iran, in return for America's agreement to their demands, was prepared to release Robert Levinson.  The Americans were asked to take this offer to their government, which they promptly did.  Despite this admission, the Iranian government has continued to deny publicly any knowledge of Robert Levinson's situation.

8. Over the years of his captivity, there have been a series of meetings between American officials concerned with Robert Levinson's fate and their Iranian counterparts.  In early 2011, Iranian representatives threatened to cut off discussions if the United States did not issue a statement absolving Iran from Robert Levinson's disappearance.  In various other meetings and in messages sent through third-parties, the Iranian government has made it clear that they would be able to "arrange" for Robert Levinson's release if the United States would "arrange" for the return to Iran of an Iranian Revolutionary Guard general who had defected from Iran after being involved in Iran's nuclear programs.  The general had defected just a few weeks prior to Iran's seizure of Robert Levinson.

9. The Levinson family is aware, from multiple reports, that Iran routinely uses physical and psychological torture in the questioning of its prisoners. Given this pattern, Robert Levinson's circumstances and his appearance and actions in the hostage-related videos and photographs described above, it is reasonable to believe that Iran has used various forms of physical and psychological torture on Levinson in addition to those inherent in keeping him *incommunicado* for ten years.

10. Iran has, for many years, established a pattern of seizing and holding hostages in order to extract concessions from the hostage's home country. That Robert Levinson's seizure is a part of that pattern is reflected in Iran's multiple attempts to use Robert Levinson's imprisonment to extort concessions from the United States, and in the fact that Robert Levinson was taken shortly after the defection of the Iranian general. These actions, and others, evidence Iran's intent to use Robert Levinson as a hostage to extract concessions from the United States.

11. To deprive a prisoner of any contact with his family or his homeland for ten years constitutes psychological torture. To deprive the prisoner's family of any contact with him as well as any knowledge of his status, his whereabouts or his well-being is wanton cruelty. The Levinson family has suffered grievously from these actions and continues to suffer.

## THE PARTIES

12. Robert Levinson was, at the time of his seizure, a long-time resident of Florida. He served as a federal law enforcement agent for the Drug Enforcement Administration and Federal Bureau of Investigation for 28 years. After his retirement from the FBI he worked as a private investigator, working for a wide range of private and public organizations. He has been married to Christine Levinson since 1974 and together they have seven children. Until his

disappearance in 2007, the Levinsons were a close knit and loving family with Robert Levinson at its center.

13.     Christine Levinson is a resident of Florida.  She has been married to Robert Levinson for 42 years.  For the last ten years she and their seven children have worked tirelessly, including traveling to Iran, to have her husband released and returned home.  The circuit court of Broward County, Florida has appointed Christine Levinson as Conservator for her husband.  She brings this suit both as Conservator on his behalf and on behalf of herself personally.

14.     Susan Levinson Boothe, Stephanie Levinson Curry, Sarah Levinson Moriarty, Samantha Levinson, Daniel Levinson, David Levinson and Douglas Levinson are the adult children of Robert and Christine Levinson.  They are a close and loving family.  Like their mother, they have each been involved for the last ten years in a desperate effort to locate and free their father.  They have repeatedly watched other hostages released when Iranian demands were met, while their father remained held.  They know that both physical and psychological torture is routinely used by the Iranians.  They have seen the death threats and they have seen the images and video of their father pleading for his life.  Each of them had strong emotional ties to their father but, as a result of Iran's actions, has been deprived of his love and companionship.  For ten years, he has missed all of the important family events, including the high school graduation of Samantha and Douglas, the graduation from college of David, Samantha and Douglas, the birth of three grandchildren (with two more on the way), the diagnosis of cancer, chemotherapy treatment and recovery from cancer by his three year old grandson, Bobby (Robert Levinson's namesake), as well as the weddings of his daughters Susan and Sarah and his son David.  As a result of his loss and their knowledge of his extraordinary suffering, they have each suffered

severe emotional trauma.  Susan, Daniel and David all reside in Florida.  Stephanie lives in Texas, Sarah in New Jersey, Samantha in New York and Douglas in Washington, D.C.

15. Robert Levinson has, for ten years, suffered physically and emotionally from his cruel treatment.  He has also suffered significant financial damage by virtue of his imprisonment.

## JURISDICTION AND VENUE

16. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1330, 1331 and 1605A.

17. This action falls within the "terrorism exception" to sovereign immunity under the FSIA, 29 U.S.C. § 1605A(a)(1), which provides, in relevant part, that "[a] foreign state shall not be immune from the jurisdiction of courts of the United States . . . in any case . . . in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture . . . [or] hostage taking . . . if such act is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency."

18. Under the terrorism exception to the FSIA, torture is defined to "have the meaning given . . . in section 3 of the Torture Victim Protection Act of 1991 (28 U.S.C. 1350 note)." 28 U.S.C. § 1605A(h)(7).  The Torture Victim Protection Act defines torture as "any act, directed against an individual in the offender's custody or physical control, by which severe pain or suffering (other than pain or suffering arising only from or inherent in, or incidental to, lawful sanctions), whether physical or mental, is intentionally inflicted on that individual for such purposes as obtaining from that individual or a third person information or a confession, punishing that individual for an act that individual or a third person has committed or is suspected of having committed, intimidating or coercing that individual or a third person, or for

any reason based on discrimination of any kind." Pub. L. No. 102-256, § 3(b)(1), 106 Stat. 73, 73 (1992), *codified at* 28 U.S.C. § (note).

19. Seizing an individual in an effort to extract concessions from the United States, and others, is hostage taking within the definition of the FSIA. *E.g., Massie v. Gov't of Democratic People's Republic of Korea*, 592 F. Supp. 2d 57, 67-69, 74 (D.D.C. 2008); *Daliberti v. Republic of Iraq, 146 F. Supp. 2d 19, 25 (D.D.C. 2001).* A plaintiff need not show that the hostage taker actually extracted such concessions, or even that it communicated its intent to the United States, *Simpson v. Socialist People's Libyan Arab Jamahiriya*, 470 F.3d 356, 357 (D.C. Cir. 2006) although in this case Defendant did both.

20. This suit seeks money damages against Iran and its agencies and instrumentalities for injury and harm caused to the Plaintiffs by acts of terrorism, torture and hostage taking against Plaintiffs.

21. These acts of terrorism, torture and hostage taking were perpetrated by officials, members, agents and instrumentalities of Iran while acting within the scope of their official capacities.

22. Plaintiffs are U.S. citizens and nationals of the United States within the meaning of the FSIA, and were such at the time of the acts of torture and hostage taking alleged herein. *See* 28 U.S.C. § 1605A(a)(ii) ("The court shall hear a claim under [the FSIA] if . . . the claimant or the victim was, at the time of the act . . . occurred a national of the United States.").

23. Defendant Iran has, since January 19, 1984, been designated a "state sponsor of terrorism" by the Secretary of State for purposes of section 6(j) of the Export Administration Act of 1979, section 620A of the Foreign Assistance Act of 1961, and section 40 of the Arms Expert

8

Control Act. Thus Defendant is a "state sponsor of terrorism" within the meaning of the FSIA.[1] *See* 28 U.S. C. § 1605A(a)(2)(A)(i)(I) ("The court shall hear a claim under [FSIA] if . . . the foreign state was designated as a state sponsor of terrorism at the time the act . . . occurred[.]. Defendant Iran, and other responsible agencies or instrumentalities of the Government of Iran, are each and collectively a "foreign state" within the meaning of the FISA. *See* 28 U.S.C. § 1603.

24. Venue for a civil action against a foreign state lies in this Court pursuant to 28 U.S.C. § 1391(f)(4) (venue is proper in the United States District Court for the District of Columbia "if the action is brought against a foreign state or political subdivision thereof").

## COUNT ONE

### Intentional Infliction of Emotional Distress – By Christine Levinson as Conservator for Robert Levinson

25. Plaintiffs incorporate by reference all prior paragraphs.

26. Beginning on or about March 9, 2007, and continuing through the date of filing of this Complaint the Iranian government has held Robert Levinson captive. They have done so without legal process and have attempted to hide their actions from his family and the outside world.

27. They have prevented him from having any communication with his family other than to plead for his life in video and photographs sent to his family. They have, for those ten years, prevented him from engaging in any communication with persons other than his captors. They have repeatedly and falsely denied any knowledge of or responsibility for his disappearance. They have used him as a hostage to attempt to extort favorable concessions from the United States government. They have engaged in both psychological and physical torture of

---

[1] *State Sponsors of Terrorism*, U.S. Dep't of State, http://www.state.gov/j/ct/list/c14151.htm (last visited Oct. 3, 2016).

Robert Levinson. Their behavior is both cruel and cynical and constitutes torture and hostage taking.

28. The result of Iran's intentional and reckless actions has been to inflict severe emotional distress on Robert Levinson.

29. Because Iran's use of hostage taking and torture were calculated to and did create severe emotional distress they are liable for the damage caused by that distress.

## COUNT TWO

### Property Loss – By Christine Levinson as Conservator for Robert Levinson

30. Plaintiffs incorporate by reference all prior paragraphs.

31. Iran's torture of Robert Levinson and their use of him as a hostage have caused him significant financial damages. Such damages were the foreseeable and predictable result of their holding him *incommunicado* for more than ten years.

32. Robert Levinson's damages include the loss of all income for the ten year period he has been held captive.

33. Under the law, Iran is responsible for any property loss caused by the actions described above.

## COUNT THREE

### Intentional Infliction of Emotional Distress/Solatium for Christine Levinson

34. Plaintiffs incorporate by reference all prior paragraphs.

35. By holding Robert Levinson captive and *incommunicado* for more than ten years, by sending to this family, threats to kill Robert Levinson and videos and photographs of him pleading for help, by refusing to confirm whether he was dead or alive and his physical condition, Iran intentionally and recklessly inflected extreme emotional distress on his wife,

Christine Levinson. Christine Levinson has labored ceaselessly to find out what happened to her husband. She has traveled to Iran where she met with Iranian officials. She has repeatedly met with Iran's ambassador to the United Nations. All of her contacts and pleas to Iran have been met with cold, cynical and false denials of any complicity in Robert Levinson's condition. Christine Levinson has been in a state of distress for ten years. She has had nightmares about his torture. She has seen her large and loving family tormented by the loss of their husband and father. She has received video and photographs of her plainly tormented husband pleading for his life. She has received emails threatening to kill her husband if American policy did not change.

36. All of Christine Levinson's distress is the direct and foreseeable result of Iran's actions and its use of torture and hostage taking. Iran is, therefore, responsible to her for her distress.

## COUNT FOUR

### Property Loss – For Christine Levinson

37. Plaintiffs incorporate by reference all prior paragraphs.

38. Iran's treatment of Robert Levinson has forced Christine Levinson to become an advocate for her husband's freedom. In that role, she has had to travel extensively to such places as Iran, Washington D.C. and New York to meet with Iranian and American officials regarding her husband's condition. She has also employed attorneys to help her husband. In addition to losing her husband's income, Christine Levinson has had to expend significant amounts of money in her campaign to have him freed. These expenditures and the loss of her husband's income constitute financial losses compensable under the law.

39. Because the expenditures and losses described above are the direct and foreseeable result of Iran's use of torture and hostage taking, Iran is responsible for these losses.

### COUNTS FIVE, SIX, SEVEN, EIGHT, NINE, TEN AND ELEVEN

**Intentional Infliction of Emotional Distress/Solatium For Susan Levinson Boothe (Count Five), Stephanie Levinson Curry (Count Six), Sarah Levinson Moriarty (Count Seven), Samantha Levinson (Count Eight), Daniel Levinson (Count Nine), David Levinson (Count Ten) and Douglas Levinson (Count Eleven)**

40. Plaintiffs incorporate by reference all prior paragraphs.

41. The Levinsons are a close and loving family. Each of the seven Levinson children has been devastated by what has happened to their father. They have lived a nightmare for more than ten years. They have seen the video and photographs of their loving father pleading for his life while wrapped in chains. They have seen the emailed threats to kill him. They have endured Iran's refusal to provide any information on their father knowing that Iran was holding him. They know that, in addition to psychological torture, Iran routinely uses physical torture on its American prisoners. They have each lost the love and companionship of their father.

42. As the direct and foreseeable result of Iran's cruel and cynical actions, including its use of torture and hostage taking, each of the children of Robert Levinson has suffered severe emotional distress. Iran is, therefore, responsible for their distress.

### REQUEST FOR RELIEF

**Wherefore, Plaintiffs demand judgment against
Iran and respectively request the following relief**

43. Plaintiffs incorporate by reference all prior paragraphs.

44. Robert Levinson is entitled to compensatory damages for the intentional infliction of emotional distress suffered as a result of Iran's use of torture and hostage taking.

45. Robert Levinson is entitled to compensatory and consequential damages for the financial losses he has suffered and will continue to suffer as a result of Iran's use of torture and hostage taking.

46. Christine Levinson, Susan Levinson Boothe, Stephanie Levinson Curry, Sarah Levinson Moriarty, Daniel Levinson, Samantha Levinson, David Levinson and Douglas Levinson are entitled to compensatory solatium damages for the intentional infliction and emotional distress resulting from Iran's use of torture and hostage taking.

47. Christine Levinson is entitled to compensatory and consequential damages for the financial losses she has suffered as a result of Iran's use of torture and hostage taking.

48. All Plaintiffs are entitled to aggravated damages for Iran's cruelty, torture and abuse.

49. All Plaintiffs are entitled to punitive damages under 28 U.S.C. §§ 1605(A)(c)(4).

50. The Court should award Plaintiffs their full costs and attorneys' fees as incidental damages.

51. The Court should award such further relief as it deems just and proper.

PLAINTIFFS REQUEST TRIAL BY JURY.

Dated this the 21st day of March, 2017.     Respectfully submitted,

/s/ James A. Byram, Jr.
DC Bar No. AL0001
jbyram@balch.com
Balch & Bingham, LLP
105 Tallapoosa Street, Suite 2000
Montgomery, AL  36104
(334) 269-3159 (Main)

(334) 269-3115 (Facsimile)
Counsel for Plaintiffs

/s/ David L. McGee
David L. McGee
FL Bar No. 220000
dlm@beggslane.com
J. Nixon Daniel, III
FL Bar No. 228761
jnd@beggslane.com
Gregory R. Miller
FL Bar No. 284777
grm@beggslane.com
Beggs & Lane, RLLP
P.O. Box 12950
Pensacola, Florida 32591-2950
(850) 432-2451 (Main)
(850) 469-3331 (Facsimile)
Counsel for Plaintiffs (Pro Hac Vice Applied For)

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that pursuant to local procedures as outlined in the Court's Attorney Manual for Service of process on a Foreign Defendant, because the defendant in this case is Iran, plaintiff need not attempt service pursuant to provisions 28 U.S.C. §§ 1608(a)(1)-(3) prior to requesting service under §1608(a)(4). In such circumstances, under 28 U.S.C. §§ 1608(a)(4), the Clerk of the Court shall send "two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state [in this case, a Farsi translation], by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services." The Secretary of State shall then take steps to effect service through diplomatic channels.

Islamic Republic of Iran
c/o Ministry of Foreign Affairs
Khomeni Avenue, United Nations Street
Tehran, Iran

/s/ James A. Byram, Jr.
DC Bar No. AL0001
jbyram@balch.com
Balch & Bingham, LLP
Counsel for Plaintiffs