UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISTINE LEVINSON *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> ISLAMIC REPUBLIC OF IRAN, <br><br> *Defendant*. | Civil Action No. 17-511 (TJK) |

## MEMORANDUM OPINION

Robert Levinson, a retired Special Agent with the FBI and DEA, was kidnapped by the Islamic Republic of Iran while on a business trip to Kish Island in March 2007, tortured, and, if alive today, is the longest-held civilian hostage in American history. After an evidentiary hearing, the Court (1) entered default judgment against Iran on behalf of Plaintiffs, including his wife and seven children, *see Levinson v. Islamic Republic of Iran*, 443 F. Supp. 3d 158 (D.D.C. 2020), (2) appointed Alan L. Balaran as a Special Master, and (3) requested that the Special Master prepare a report "regarding each Plaintiff's compensatory damages claims" to include "findings of fact and conclusions of law regarding each item of compensatory damages," ECF No. 68 at 2.

The Special Master produced a detailed report, based on testimonial and documentary evidence, containing the facts relevant to the compensatory damages claims and analyzing those facts under the law. *See* Special Master's Report ("R&R"), ECF No. 69. Plaintiffs responded to the report and did not object to any of it, although they did advocate for slightly increased solatium damages. ECF No. 70 at 3–8. They also requested that this Court determine punitive damages, which they propose at $150,000,000 per Plaintiff. *Id.* at 8. For the reasons explained

below, the Court will adopt the Special Master's Report on compensatory damages and award Plaintiffs punitive damages in the amount requested.[1]

The damages requested by Plaintiffs here are authorized by 28 U.S.C. § 1605A(c), which specifically references "economic damages, solatium, pain and suffering, and punitive damages." Plaintiffs "must prove the amount of the damages by a reasonable estimate consistent with this Circuit's application of the American rule on damages." *Wultz v. Islamic Republic of Iran*, 864 F. Supp. 2d 24, 37 (D.D.C. 2012) (internal quotation marks and citation omitted). In determining the "reasonable estimate," courts may look to expert testimony and prior awards for comparable injury. *See Reed v. Islamic Republic of Iran*, 845 F. Supp. 2d 204, 214 (D.D.C. 2012); *Acosta v. Islamic Republic of Iran*, 574 F. Supp. 2d 15, 29 (D.D.C. 2008).

As for compensatory damages—including both solatium and pain and suffering—the Court adopts the Special Master's recommendations and for the reasons described in his report will award the recommended damages to each Plaintiff, which total $107,000,000. *See* R&R at 22–35. In so doing, the Court also denies an award of economic damages to Plaintiffs because they failed to support these claims with evidence, a conclusion to which they did not object. *Id.* at 32–35; ECF No. 70 at 8.

Regarding punitive damages, the Special Master was not asked by the Court to recommend whether, and if so in what amount, they are appropriate. Thus, the Court turns to that task. "Punitive damages are not meant to compensate the victim, but [are] instead meant to award the victim an amount of money that will punish outrageous behavior and deter such

---

[1] The Court assumes familiarity with the facts of this case, set forth in its opinion awarding Plaintiffs a default judgment against Iran, *see Levinson*, 443 F. Supp. 3d at 162–66, and incorporated here by reference.

outrageous conduct in the future." *Bodoff v. Islamic Republic of Iran*, 907 F. Supp. 2d 93, 105 (D.D.C. 2012) (quoting *Oveissi v. Islamic Republic of Iran*, 879 F. Supp. 2d 44, 56 (D.D.C. 2012)). Courts routinely award punitive damages in cases brought under the terrorism exception to the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1602 *et seq.*, and Iran's conduct relative to this case obviously warrants them.

Courts use four factors to determine to the proper amount of punitive damages: "(1) the character of the defendants' act, (2) the nature and extent of harm to the plaintiffs that the defendants caused or intended to cause, (3) the need for deterrence, and (4) the wealth of the defendants." *Bodoff*, 907 F. Supp. 2d at 105 (quoting *Acosta v. The Islamic Republic of Iran*, 574 F. Supp. 2d 15, 30 (D.D.C. 2008)). Here, these factors support a substantial punitive damages award. As reflected in the Court's prior opinion, Iran's kidnapping, torture, and detention of Levinson since 2007 is barbaric conduct that has caused him and his family immeasurable suffering. Moreover, Iran's kidnapping and torture of and attacks on U.S. citizens, either directly through Iranian state institutions or by provision of material support to militant groups, is "part of a longstanding pattern and policy, making the need for deterrence clear." *Hekmati v. Islamic Republic of Iran*, 278 F. Supp. 3d 145, 166 (D.D.C. 2017); *see Frost v. Islamic Republic of Iran*, 383 F. Supp. 3d 33 (D.D.C. 2019). And "Iran is a sovereign and has substantial wealth." *Bluth v. Islamic Republic of Iran*, 203 F. Supp. 3d 1, 25 (D.D.C. 2016).

Courts have used several methods to determine the exact amount of punitive damages, while considering these factors. *See Warmbier v. Democratic People's Republic of Korea*, 356 F. Supp. 3d 30, 59–60 (D.D.C. 2018) (discussing each approach). One approach often used in cases of exceptionally deadly attacks is to multiply the foreign state's annual expenditures on

terrorism by a factor between three and five. *Id.* A second approach pegs punitive damages to the ratio of punitive to compensatory damages set forth in earlier cases, if similar conduct has already been litigated. *Id.* at 60. And a third approach simply awards $150,000,000 per affected family. *Id.*

Plaintiffs urge the Court to employ a modified version of the last method. Analogizing to Chief Judge Howell's approach in *Warmbier*, Plaintiffs request $150,000,000 in punitive damages for each Plaintiff, rather than each family. *See* ECF No. 70 at 8–9; ECF No. 37 at 30. After reviewing the evidence and the case law applying the three approaches above, the Court agrees with Plaintiffs that *Warmbier* provides an appropriate model for computing punitive damages in this highly unusual case and will award such damages as they request.

As for the first approach, the result of the kidnapping and torture of Levinson—while outrageous—was not "exceptionally deadly" when compared to other cases brought under the terrorism exception to the Foreign Sovereign Immunities Act, such as the Beirut bombing which killed 241 Americans. *See Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d. 51, 55 (D.D.C. 2010). Nor have Plaintiffs developed an evidentiary record to support it. And the second approach is more typically applied situations in which similar conduct has been the subject of other lawsuits. *See, e.g.*, *Fritz v. Islamic Republic of Iran*, 324 F. Supp. 3d 54, 65–66 (D.D.C. 2018).

In *Warmbier*, the court found that a modified version of the third approach was warranted. In that case, Otto Warmbier, a "healthy, athletic student of economics and business in his junior year at the University of Virginia," took a short trip to North Korea with a tour group before attending a study abroad program in China. 356 F. Supp. 3d at 36–37. Authorities

4

of that totalitarian state prevented Warmbier from leaving on his scheduled flight, forced him to make a false confession, subjected him to a secret "trial", sentenced him to 15 years of hard labor, and detained him for about 17 months. *Id.* at 37–39. When Warmbier was returned to his family in the United States, he was found to have severe brain damage—blind, deaf and without "any signs of consciousness." *Id.* at 41. He also had "a large scar on his left foot," a wound not present when he left the United States, and his once "perfectly straight" teeth were "noticeably misaligned." *Id.* Warmbier's family, understandably horrified, and informed that he would not recover, approved ending life-sustaining measures, and he died within a week. *Id.*

Chief Judge Howell found North Korea liable for Warmbier's kidnapping, torture, and extrajudicial killing. *Id.* at 46–55. Regarding punitive damages, she found that the case was "unique," and concluded that the "third approach . . . [was] the most appropriate." *Id.* at 60. And in addition, after recognizing that North Korea had committed acts that were "awful and worthy of the gravest condemnation" and that it was "keenly aware of the political environment" in the United States, including "judgments issued by United States courts," she held that a larger award was appropriate to punish and deter North Korea. *Id.* (cleaned up). Thus, she awarded the three plaintiffs in that case—Warmbier's estate, his mother, and father—$150,000,000 each in punitive damages, for a total of $450,000,000. *Id.*

This Court finds that *Warmbier* provides an apt template for resolving the question of punitive damages in this case. Iran's conduct here is also unique, given that—astonishingly—it plucked a former FBI and DEA Special Agent from the face of the earth without warning, tortured him, held him captive for as long as 13 years, and to this day refuses to admit its responsibility. And his wife and children, and their spouses and children—while keeping

Levinson's memory alive—have had to proceed with their lives without knowing his exact fate. These are surely acts worthy of the gravest condemnation. Moreover, there can be little doubt that Iran is aware of the many judgments issued by United States courts against it for liability under the FSIA since it abducted Levinson in 2007. Indeed, Iran's central bank litigated a case to the Supreme Court just a few years ago that arose out of judgments against it for its state-sponsored terrorism. *Bank Markazi v. Peterson*, 136 S. Ct. 1310 (2016). None of these judgments since Levinson's kidnapping has deterred Iran from its conduct in this case. Punitive damages are thus awarded to each of the nine Plaintiffs in the amount of $150,000,000, for a total of $1,350,000,000.

## II.     Conclusion

For the reasons explained above, the Court adopts the Special Master's factual findings and recommendations about compensatory damages and will award Plaintiffs a total judgment of $107,000,000 in compensatory damages. In addition, the Court will award punitive damages in the total amount of $1,350,000,000. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: October 1, 2020